UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

STEVEN M. HUNTER, :
:
    Petitioner :
    v. : CIVIL NO. 1:10-CV-1594
:
UNITED STATES PAROLE : (Judge Caldwell)
COMMISSION, *et al.*, :
:
    Respondents :

*M E M O R A N D U M*

I.   *Introduction*

    The pro se petitioner, Steven M. Hunter, filed this action seeking habeas relief against the United States Parole Commission for denial of parole.[1] Petitioner is serving an aggregate term of imprisonment of ten years and four months to thirty-one years following his convictions in the Superior Court of the District of Columbia for first-degree burglary, assault with a dangerous weapon, and aggravated assault. In his petition, Hunter asserts a number of claims challenging his denial of parole, many of which he previously advanced both before this court, and other federal district courts.[2] However, when his successive and previously litigated issues are removed, the petition

---

[1] Hunter is presently confined at USP Florence-High in Florence, Colorado, but filed the action while housed at the United States Penitentiary in Lewisburg, Pennsylvania.

[2] The petition was filed under 28 U.S.C. § 2241. Because Petitioner's sentence was imposed by the Superior Court of the District of Columbia, he is considered a state prisoner for federal habeas purposes. *See Wilson v. U.S. Parole Comm'n*, __ F.3d __, __, 2011 WL 2937277, at *3 (3d Cir. 2011)(citing *Madley v. U.S. Parole Comm'n,* 278 F.3d 1306, 1309 (D.C. Cir. 2002), and *Robinson v. Reilly*, 340 F. App'x 772, 773 (3d Cir. 2009)(per curiam)(nonprecedential)). He must therefore rely on the habeas provision applicable to state prisoners, 28 U.S.C. § 2254, not on § 2241. *Id*. The instant petition will therefore be construed as being filed under § 2254. This means Petitioner must receive a certificate of appealability in order to pursue an appeal. *Id.*; 28 U.S.C. § 2253(c)(2).

raises the following viable claims related to Hunter's most recent, July 2010, denial of parole: (1) the Commission engaged in impermissible "double-counting" when assessing his parole suitability; (2) the Commission erred in considering his BOP institutional misconducts in reaching its recent decision since those infractions were not adjudicated in accordance with District of Columbia procedures but instead under BOP policy; (3) the Commission abused its discretion by failing to follow the Hearing Examiner's recommendation of setting Petitioner's next parole hearing in eighteen months; and (4) the Commission abused its discretion by departing from the rehearing guidelines and extending Hunter's rehearing to thirty-six months when it had ordered a twelve-month set-off in 2009.[3]

For the reasons set forth below, Hunter's petition will be denied.

II.   *Standard of Review*

   A.   *Review of Parole Commission DC Parole Decisions*

It is well-settled that "there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmate of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979); *see also Ellis v. District of Columbia*, 84 F.3d 1413 (D.C. Cir. 1996)(District of Columbia parole statute and regulations do not create any liberty interest in parole). Nonetheless, even though a convict has no liberty interest in parole protected

---

[3] On August 5, 1998, pursuant to the National Capital Revitalization and Self-Government Improvement Act of 1997 (Revitalization Act), Pub.L. No. 105-33, § 11231(a)(1), 111 Stat. 712, 745, D.C. Code § 24-131(a), the District of Columbia Board of Parole was abolished, and the Parole Commission assumed jurisdiction over parole decisions for District of Columbia offenders.

by the Due Process Clause, a fundamental due process right to be free from "capricious decision making" protects parole applicants from being denied parole for "arbitrary or constitutionally impermissible reasons." *Block v. Potter*, 631 F.2d 233, 236 (3d Cir. 1980).

The Commission is vested with discretion to determine a District of Columbia convict's eligibility for parole. *McRae v. Hyman*, 667 A.3d 1356 (D.C. 1995)(holding that the District of Columbia's parole scheme confers discretion to grant or deny parole, and the scoring system creates no liberty interest overriding the exercise of that discretion); *Muhammad v. Mendez*, 200 F. Supp. 2d 466 (M.D. Pa. 2002)(no liberty interest under the D.C. guidelines).

The district court's review of such a decision is "not whether the [decision of the] Board is supported by the preponderance of the evidence, or even by substantial evidence; the inquiry is only whether there is a rational basis in the record for the Board's conclusions embodied in its statement of reasons." *Zannino*, 531 F.2d 687, 691(3d Cir. 1976); *see also Furnari v. Warden, Allenwood Fed. Corr. Inst.*, 218 F.3d 250, 254 (3d Cir. 2000). "To this end, 'the Commission may not base its judgment as to parole on an inaccurate factual predicate.'" *Id. (citing Campell v. United States Parole Comm'n*, 704 F.2d 106, 109 (3d Cir. 1983)). However, in making its decision, the Commission may consider hearsay, counts of an indictment that has been dismissed, and information in a separate dismissed indictment. *See Campbell*, 704 F.2d 109-110 (collecting cases).

The appropriate remedy when the Commission exceeds its discretion is to remand the matter to the agency for further proceedings consistent with the court's opinion. *See Mickens-Thomas v. Vaughn*, 355 F.3d 294, 309-10 (3d Cir. 2004)(citing

*Bridge v. United States Parole Commission*, 981 F.2d 97, 105 (3d Cir. 1992)).

    *C.*    *Relevant Parole Regulatory Framework*

The Commission must determine the inmate's parole eligibility pursuant to the District of Columbia guidelines in place at the time the offense was committed. *See Sellmon v. Reilly*, 551 F. Supp. 2d 66 (D.D.C. 2008), although the Commission has the authority to depart from the guidelines. *See Ellis,* 84 F.3d at 1419-20 (holding that the D.C. Board had discretion to depart from guidelines); *McRae*, 667 A.2d at 1357 (same).

Hunter was sentenced in the Superior Court of the District of Columbia on February 1, 1996. *See* Doc. 31-1, Ex. 1, Sentence Monitoring Computation Data at p. 4.[4] As the Commission conducted his initial parole hearing on February 17, 2005, (Doc. 31-1, Ex. 3, Hearing Summary at p. 10), all Commission decisions regarding his parole must be made in reference to the D.C. guidelines in effect on August 4, 1998. *See* 28 C.F.R. § 2.80(a)(5). Accordingly, the 1987 D.C. guidelines[5] are to be applied to all Commission rehearing considerations involving Hunter.

The 1987 guidelines set forth a scoring system for use in deciding whether to grant or deny parole. *See* 28 D.C.M.R. § 204.1 (1987); *Sellmon,* 551 F. Supp. 2d at 69-73; *Ellis,* 84 F.3d at 1415-17. Under these guidelines, "even if the prisoner established

---

[4] Unless otherwise noted, all citations to the record are to the docket number and page number assigned by the electronic case filing system (CM/ECF) rather than the page numbers of the original documents.

[5] The District of Columbia Board of Parole promulgated parole regulations for use in 1985. Those parole regulations were not published formally in the District of Columbia Municipal Register until 1987 (the 1987 guidelines). Effective August 5, 1998, jurisdiction to make parole decisions for D.C.Code offenders was transferred to the Parole Commission, pursuant to D.C.Code § 24-13(a). *See* Doc. 31-5, 28 DCMR.

everything the statute required, the Board of Parole still had discretion to deny parole."

*Ellis*, 84 F.3d 1415.

> In sum, the District's parole system is grounded in the exercise of discretion by the Board, with a numerical system to aid in the exercise of that discretion. The numerical system is not a rigid formula, however, because the Board is not required to either grant or deny parole based upon the score attained . . . [T]he Board [has] authority, in unusual cases, to ignore the results of the scoring system and either grant or deny parole in the individual case, conditioned upon the Board's setting forth in writing those factors it relied on in departing from the result indicated by the scoring system. Therefore, because the statute and regulations vest in the Board substantial discretion in granting or denying parole . . . they lack the mandatory character which the Supreme Court has found essential to claim that a regime of parole gives rise to a liberty interest.

*McRae v. Hyman*, 667 A.2d at 1360-61 (internal quotations and citations omitted); *see also Ellis*, 84 F.3d at 1416. The D.C. Board identified a non-exhaustive list of "factors countervailing a recommendation to grant parole" to be considered when denying parole despite a low total point score:

- the offender has had repeated failures under parole supervision;
- the instant offense(s) involve(s) on-going criminal behavior;
- the offender has a lengthy history of criminally-related alcohol abuse;
- the offender has a history of repetitive, sophisticated criminal behavior;
- the offender has an unusually extensive or serious prior record, including at least five felony convictions;
- the instant offense(s) involve(s) unusual cruelty to victim(s);
- the offender has engaged in repeated or extremely serious negative institutional behavior;
- the offender has a lengthy history of criminally-related substance abuse;
- the offender had the opportunity, but made little or no effort toward rehabilitation or preparation for remaining crime-free if released to the community; and
- the offender needs programs and/or rehabilitation services to minimize risk to the community when actually released to

-5-

parole.

*Ellis*, 84 F.3d at 1416; *see also Sellmon*, 551 F. Supp. 2d at 69-71; See Doc. 31-5, 28 DCMR § 204 and Appendices 2-1 and 2-2 (1987).[6]

Where parole is denied at the initial hearing or a subsequent rehearing, there is a "set off," or period of time an offender may remain incarcerated before being considered again for parole. While the guidelines set forth a schedule to be utilized when determining the offender's set off based on the imposed term of imprisonment, the Commission "*in its discretion,* may schedule a reconsideration date later than the prescribed set-off if one or more aggravating factors are present. . . ." *Hall v. Henderson,* 672 A.2d 1047, 1052 (D.C. 1996)(emphasis added); *See* 28 DCMR § 104.11 (1987).

III.   *Hunter's Criminal History and Parole Proceedings*.

   *A.   Hunter's Criminal History*

On the evening of May 27, 1995, Hunter entered the home of his former girlfriend. Hunter entered her bedroom and found her sleeping in bed with another individual. Hunter commenced beating her companion about the head, face and body with a sawed-off shotgun. Doc. 31-1, Ex. 2, Pre-hearing Assessment at pp. 6-9. Hunter

---

[6] The Board's 1991 Policy Guidelines give greater definition to each of these terms and the criteria and parameters for their usage in parole matters "to facilitate consistency in Guideline application." *See* Doc. 31-6, 1991 Guidelines. Further, in some situations there are limits placed on the decisionmaker's consideration of a countervailing factor. For instance, the Commission may consider certain classes of disciplinary infractions at an inmate's initial parole consideration that occurred within specified times of the convict's minimum sentence, *see* Doc. 31-6 at pp. 7-8, but at his parole reconsideration, the Commission may only consider certain offenses that "occurr[ed] since the preceding release consideration on the sentence ...". *Id*. at p. 8. This limitation contrasts with the Commission's ability to consider certain factors, regardless of the time frame , such as consideration of the unusual cruelty to victims of the instant offense, which may be considered at any parole hearing, either the initial one or a later parole rehearing. *Id.* at p. 7; *see also Sellmon,* 551 F. Supp. 2d at 71.

then fired one shot at the victim and fled the apartment leaving his victim unconscious, with a gunshot wound to his left arm and a fractured skull and jaw. *Id*. Following this assault, Hunter contacted his former girlfriend several times by telephone, warning her, "See what you made me do to your boy!  If you tell the police, you're next!  If you testify, I'm going to kill you!" *Id*. at p. 6.

On February 1, 1996, Hunter was sentenced to an aggregate term of imprisonment ten years and four months to thirty-one years by the District of Columbia Superior Court following his conviction for assault, first-degree burglary, assault with a dangerous weapon, aggravated assault while armed, and possession of a firearm during a crime of violence.  Doc. 31-1, Ex. 1, Sentence Monitoring Computation Data at p. 4. Hunter became eligible for parole on this sentence on January 14, 2004.  *Id*. at p. 2.

### B. Hunter's Parole Proceedings

The Commission conducted its initial hearing on Hunter's case on February 17, 2005.  Doc. 31-1, Ex. 3, Hearing Summary at pp. 10.  The Commission denied Hunter parole, and ordered a rehearing in 2008.  Doc. 31-2, Ex. 4, Notice of Action dated March 16, 2005.  The Commission next held a hearing on July 30, 2008, (*id.*, Ex. 5, Hearing Summary at p. 18), at which time the Commission again denied Hunter release on parole, and ordered a rehearing in three years.  *Id*., Ex. 6, Notice of Action dated August 11, 2008 at p. 22.

On June 12, 2009, the Commission reopened Hunter's case, to conduct a new parole hearing, using the 1987 guidelines of the D.C. Board, and the 1991 policy guidelines relating to the transfer of paroling authority from the D.C. Board to the United

States Parole Commission. *Id.*, Ex. 7, Notice of Action dated June 12, 2009 at p. 23.

The Commission then conducted a hearing in Hunter's case, using the 1987 guidelines, and the Commission's 1991 policy, on July 27, 2009. *Id.*, Ex. 8, Hearing Summary at p. 25. At this hearing, the Hearing Examiner found that Hunter had a grid score of 2 points under the 1987 guidelines, a score which provided for parole eligibility in the ordinary case. *Id.* at p. *29.* The Hearing Examiner, however, departed from the guidelines recommendation, citing both the brutality of Hunter's crime and his history of unrelenting violence in prison, both of which strongly suggested that Hunter presented an immediate and grave danger to others. The Commission found:

> [A] departure from the guidelines at this consideration is found warranted because you are a more serious risk that indicated by the Grid Point Score because your instant offense of conviction involved unusual cruelty to the victim. Specifically, you broke into the apartment where the victim and the eyewitness were asleep. You beat the victim severely with a shotgun causing fracture to the skull and jaw and then you shot the victim from point blank range with [the] shotgun. This action could have caused the death of the victim. Additionally, you threatened to kill the eyewitness if she testified in court.
>
> You are also a more serious risk than indicated by your Grid Point Score based on your serious negative institutional adjustment. In the last year alone, you have [incurred] seven DHO level infractions that would be rated as Class I and Class II offenses, including Interfering with Staff, Possession of a Weapon, Three Class II Assaults, and several other Class II offenses. Most of this serious institutional misconduct was carried [out] in anger and in retaliation to Bureau of Prisons Staff. Regarding the fighting and assaultive conduct, you continued to blame other people for you having committed these infractions.
>
> The above institutional infractions and your response to those infractions at today's hearing indicates that you have poor impulse control and poor anger management skills, both of which make you a danger to the community if you are paroled.

*Id*., Ex. 9, Notice of Action dated Sept. 26, 2009 at pp. 31-32.  The Commission decided to re-examine Hunter's case twelve months from his last hearing.  *Id*.  It was recommended that Hunter remain incident free and enroll in and complete meaningful programs aimed at controlling his anger.  *Id*. at p. 31.

Hunter's next parole hearing was held on July 27, 2010.  *Id*., Ex. 10, Hearing Summary dated July 27, 2010 at p. 33.  Hunter was represented by counsel at this hearing.  *Id*. at p. 33.  In the twelve months since his last hearing, Hunter had amassed seven additional incident reports, including one for possession of a dangerous weapon and threatening bodily harm, and three others for threatening bodily harm.  *Id*. at pp. 34-35.  Hunter's grid score was calculated as 2 points, a score which would make Hunter parole eligible under the 1987 guidelines.  *Id.* at p. 36.  However, presented with Hunter's continuing institutional violence, the Hearing Examiner recommended a denial of parole, and continuance to a rehearing in eighteen months, based upon the risk Hunter's conduct posed to others.  *Id*.  The Commission cited the following reasons for denying Hunter parole:

> You have a total point score of 2 under the 1987 [D.C.] Board guidelines for D.C. Code offenders. The guidelines indicate that parole should be granted at this time.  However, a departure from the guidelines at this consideration is found warranted because the Commission finds there is a reasonably probability that you would not obey the law if released and your release would endanger the public safety.  You are a more serious parole risk than shown by your point score because your instant offense of conviction involved unusual cruelty to the victim. Specifically, you broke into the apartment while the victim and an eyewitness were sleeping.  You beat the victim severely with a shotgun causing a fracture to the skull and jaw and then you shot the victim from point blank range with the shotgun.  This action could have resulted in the death of the victim. Additionally you threatened to

>   kill the eyewitness if she testified in court.  You are also a more serious risk than indicated by your Grid Score based on your serious negative institutional adjustment.  In the last year alone you incurred a total of eight DHO level infractions, five of which would be rated as Class II infractions: Threatening Bodily Harm, Interfering with Security Device, Attempt Assault without Serious Injury, and additional disruptive behavior.  One discipline report would be rated as a Class I infraction, Possessing a Dangerous Weapon. Your discipline behavior shows a lack of self-control to follow institutional rules which indicates that you would be a risk upon release to the community.
>
>   The guidelines for the time to rehearing indicate that your next hearing should be scheduled within 12 months. A departure from these guidelines is found warranted for the same reasons provided above for denying parole.

*Id*., Ex. 11, Notice of Action dated Aug. 17, 2010.  The Commission, in the exercise of its discretion, extended Hunter's parole reconsideration date beyond the Hearing Examiner's recommendation of eighteen months to thirty-six months.  *Id*., Ex. 10 at p. 37.

IV.   *Discussion*

   A.   *Many of Hunter's Claims are Procedurally Barred*

Hunter's Amended Habeas Corpus Petition sets forth twenty-two individual "claims."  Many of these claims are redundant and/or procedurally barred.  *See*  Doc. 25, Am. Habeas Pet.  Claims unrelated to his July 2010 parole reconsideration hearing (i.e. those related to his 2005, 2008 or 2009 parole hearings) are either presently under consideration in other pending habeas cases, or have been already adjudicated, or could have been raised in prior petitions.  The court takes judicial notice of the records in the following matters which confirm that many of Hunter's claims have either previously been presented in prior petitions filed with this court or conclusively resolved by other federal courts: (1) *Hunter v. Bledsoe,* 10-CV-0137 (M.D. Pa.)(currently pending before this

court)(challenges the July 27, 2009, hearing and the Parole Commission's subsequent denial of parole); (2) *Hunter v. Parole Comm'n*, 406 F. App'x 879 (5th Cir. 2010)(Hunter's receipt of a July 2009 parole hearing applying the old guidelines moots his Ex Post Facto claim based on his 2005 and 2008 hearings); and (3) *Hunter v. Parole Comm'n*, 308 F. App'x 856 (5th Cir. 2009)(Ex Post Facto and abuse-of-discretion claims relative to Hunter's 2005 and 2008 parole hearings dismissed). In this setting, where claims have been previously adjudicated, the proper course to follow is to decline to re-adjudicate these previously litigated matters. *See e.g., Abdel-Whab v. Secretary of Department of Homeland Security*, 132 F. App'x 988 (3d Cir. 2002)(second petition filed pursuant to Section 2241 in Eastern District of Pennsylvania appropriately dismissed by district court as an abuse of the writ, since the petition was "nearly identical" to the one dismissed by district court in the Middle District of Pennsylvania); *Furnari v. U.S. Parole Comm'n*, 531 F.3d 241, 250-52 (3d Cir. 2008)(affirming district court's dismiss of habeas claim for abuse of writ). Therefore, we will decline to re-visit previously adjudicated matters in this petition, but will instead focus on the merits of the new claims that Hunter advances relating specifically to his July 2010 parole hearing.

    *B.  Merits Review of Hunter's Remaining Claims*

    In considering the merits of Hunter's remaining claims, we note at the outset, that Hunter appears to have a fundamental misunderstanding regarding the nature of his right to parole and the scope of the court's review of parole determinations. First, as a general matter Hunter erroneously concludes that he has a constitutionally protected liberty interest in parole based on the D.C. guidelines. Quite the contrary, as noted above,

-11-

it is well-settled that "there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmate of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979); *see also Ellis v. District of Columbia*, 84 F.3d 1413 (D.C. Cir. 1996)(D.C. parole statute and regulations do not create any liberty interest in parole). The authority of the Parole Commission in this regard is expressly noted by statute. *See* D.C. Code § 24-131(c)("The Parole Commission shall exercise the authority vested in it by this section pursuant to the parole laws and regulations of the District of Columbia . . . ."). The relevant section provides:

> Whenever it shall appear to the Board of Parole that there is a reasonable probability that a prisoner will live and remain at liberty without violating the law, that his release is not incompatible with the welfare of society, and that he has served the minimum sentence imposed or the prescribed portion of his sentence, as the case may be, the Board *may authorize* his release on parole upon such terms and conditions as the Board shall from time to time prescribe.

D.C. Code § 24-404(a)(formerly § 204(a))(emphasis added).

Second, the appropriateness of the Parole Commission's decision to deny parole is unreviewable. It is only reviewable to determine if the decision was within legal bounds and not an abuse of discretion resulting in the inmate's illegal confinement. Hence the broad review of the underlying merits of the various parole decisions that Hunter invites this court to undertake is improper. *Stevens v. Quick*, 678 A.2d 28, 31 (D.C. App. 1996)(court does not review the merits of decision by U.S. Parole Commission, under District's parole regulations); *Bennett v. Ridley*, 633 A.2d 824, 826 (D.C. App. 1993)("On a petition for a writ of habeas corpus, this court does not review the merits of

-12-

the [D.C. Parole] Board's decision [to revoke parole], but only whether the petitioner has been deprived of his legal rights by the manner in which the revocation hearing was conducted, in order to determine whether there has been an abuse of discretion."); *Smith v. Quick*, 680 A.2d 396, 398 (D.C. App. 1996)("We do not review the merits of the Board's decision in denying parole, and are limited to a review of the procedures used by the Board in reaching its decision."); *Jones v. Braxton,* 647 A.2d 1116 (D.C. App. 1994)(merits of decision denying parole not judicially reviewable); *Brown-Bey v. Hyman*, 649 A.2d 8 (D.C. App. 1994)(length of set-off to rehearing is "merits" decision, and is not judicially reviewable). Such matters rest instead in the Commission's discretion.

We now turn to Hunter's other claims, which viewed in this light, fail on their merits. First, Hunter suggests that he was denied due process because the BOP incident reports relied upon by the Commission in denying him parole were not adjudicated as they would have been by a D.C. institution.[7] This argument is unfounded. The BOP inmate disciplinary procedures are codified at 28 C.F.R. § 541, *et seq*., and entitled, *Inmate Discipline and Special Housing Units*. These guidelines are specifically tailored and designed to meet the due process requirements prescribed by the United States Supreme Court in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). *See Von Kahl v. Brennan,* 855 F. Supp. 1413, 1418 (M.D. Pa. 1994). Since the procedures employed by BOP disciplinary proceedings fully satisfy due process requirements,

---

[7] Pursuant to the Revitalization Act, District of Columbia inmates were to be transferred to the BOP and "*shall be subjected to any law or regulation applicable to person committed for violations of laws of the United States consistent with the sentence imposed." See* D.C. Code § 24-101(a) and (b)(emphasis added). Thus, as the BOP was vested with the legal custody of D.C. Code offenders, they too are subject to the disciplinary regulations of the BOP.

reliance on the outcomes of those proceedings is fully justified by parole adjudicators. Moreover, the Parole Commission "has broad discretion to review materials helpful in determining whether to release a prisoner on parole." *Furnari v. U.S. Parole Comm'n*, 125 F. App'x 435, 437 (3d Cir. 2005). This would apply equally to the offender's positive or negative institutional adjustment and their involvement in educational and rehabilitative programming. In fact, parole officials may even rely upon wholly unadjudicated criminal conduct when making parole decisions. *See Arias v. U.S. Parole Comm'n*, 648 F.2d 196, 200 (3d Cr. 1981). Thus, Hunter's claim based on the use of BOP misconducts is unavailing. Reliance on BOP incident reports was proper.

Similarly, Hunter's "double-counting" claim is meritless.[8] Hunter contends the Commission's reliance on his background and institutional record for the purpose of rendering an "above the guideline" decision constitutes "double counting" since the Commission had already relied on this information to calculate his total point score. Double counting did not occur in this case as the same factor was not used twice.

In considering "double-counting" claims, courts recognize the broad authority of parole officials to fully consider all relevant information when making parole determinations. Therefore, these claims are judged by a deferential standard of review,

---

[8] "Double-counting" occurs when the Parole Commission abuses its discretion and uses the same aggravating factors to establish a D.C. Code offender's total point score and to justify its decision to exceed the prescribed parole guideline release date. *Romano v. Baer*, 805 F.2d 268, 271 (7th Cir. 1986)(using aggravating factors to continue prisoner beyond the guidelines when such factors were used to place the prisoner in a particular severity category constitutes an abuse of discretion); *see also Muhammad v. Mendez*, 200 F. Supp. 2d 466, 472 n.6 (M.D. Pa. 2002). It is not impermissible double counting when "the Commission considers the nature and circumstances of petitioner's prior and confining offense which were also considered by the sentencing judge. The Commission is allowed to consider those factors in determining whether or not a prisoner is safe to release into the community." *Muhammad*, 200 F. Supp. 2d at 472 n.6.

and a parole decision will be set aside on the grounds that parole officials engaged in improper double counting only when the parole consideration of certain information was arbitrary or irrational. *See Harris v. Martin*, 792 F.2d 52 (3d Cir. 1986). Therefore, where the Commission has a rational basis for considering a factor in several different ways when denying parole, a "double counting" claim will fail. *Morgan v. Lamanna*, 150 F. App'x 145 (3d Cir. 2005).

Judged against these legal benchmarks, Hunter's double counting claim fails both factually and legally. First, as a factual matter, Hunter errs when he suggests that the July 2010 parole-denial decision was based solely on factors previously considered by the Commission and therefore constitutes double counting. Quite the contrary, the Commission expressly focused on the brutal nature of his underlying offense in addition to the multiple and serious institutional misconducts Hunter accrued since his last parole hearing. This new information, which strongly suggested that Hunter presented an on-going risk, could not have been "double-counted" by the Commission since it reflected events which had occurred *after* Hunter's 2009 parole hearing. As a legal matter, it was reasonable, rational and entirely proper for the Commission to take into account Hunter's on-going propensity for violence when departing from the parole guidelines. Since the Commission was entitled, and in fact obliged, to consider this recent violent institutional conduct in assessing Hunter's parole eligibility, this decision was completely rational and Hunter's "double counting" claim fails. *Morgan, supra.* There was no abuse of discretion by the Parole Commission in relying of these factors when continuing him beyond the parole guidelines.

Finally, Hunter's claim that the Commission abused its discretion by not

adopting the July 2010 Hearing Examiner's recommendation that he be reconsidered for parole in eighteen months, and by extending his parole hearing date to thirty-six months, is meritless. At the outset, this Commission decision is considered a merits determination which normally is not subject to substantive judicial review. *See Brown-Bey v. Hyman*, 649 A.2d 8 (D.C. App. 1994)(length of set-off to rehearing is "merits" decision, and is not judicially reviewable). In any event, the Commission's regulations make clear that the authority to make parole determinations is vested in the Parole Commissioners, not the Hearing Examiners. *See* 28 C.F.R. § 2.89 (making § 2.23 applicable in D.C. Code offender parole cases); § 2.23 (requiring concurrence of two examiners to form a hearing panel recommendation, and clarifying that such recommendation is only a Commission decision if approved by a Commissioner). Therefore, nothing compels the Commission to accept the Hearing Examiner's recommendation.

Moreover, the applicable parole guidelines and regulations expressly permit the Commission's action, stating that for a person serving a sentence of five years or more, "reconsideration shall *ordinarily* occur within twelve months," but further providing that "[n]otwithstanding any other provision of this section, the Board may order a parole reconsideration date *it determines to be appropriate*." 28 D.C.M.R. § 104.2 and § 104.11 (emphasis added).

Finally, as a factual matter, the Commission's decision to extend this hearing date to thirty-six months was entirely reasonable given Hunter's history of recurrent institutional violence. It would allow the Commission to assess Hunter's institutional adjustment over a thirty-six-month term, and make more informed decisions regarding his future parole eligibility in light of that institutional adjustment history. In sum, the

-16-

scheduling of parole hearings is a matter exclusively charged to the Commission's discretion, and the reasonable choices made by the Commission in this regard may not be set aside through a habeas corpus petition.

### C. *Petition for a Writ of Mandamus*

Hunter has also filed a document styled as an emergency petition for mandamus which would direct the Commission to schedule a new hearing in his case. *See* Doc. 35. As a general rule, to demonstrate that mandamus is appropriate, a petitioner must establish that he has "no other adequate means" to obtain the relief and that he has a "clear and indisputable" right to issuance of the writ. *U.S. v. Higdon*, 638 F.3d 233 (3d Cir. 2011). A writ of mandamus is a drastic remedy available only in extraordinary situations. *See In re Diet Drugs Prods. Liab. Litig.*, 418 F.3d 372, 378 (3d Cir. 2005). In this case, we have found that Hunter has no right to relief. Having made this finding, we conclude that Hunter has not shown that his right to the writ is clear and indisputable. *See In re Patenaude,* 210 F.3d 135, 141 (3d Cir. 2000). Therefore, Hunter is not entitled to mandamus relief.

### V. *Conclusion*

For the foregoing reasons Hunter's amended petition for writ of habeas corpus (Doc. 26) will be denied, and Hunter's emergency motion to show cause (Doc. 19), motion for implementation (Doc. 20), and emergency petition for writ of mandamus (Doc. 35) will be denied.

Because Petitioner is in custody by virtue of a District of Columbia judgment, he is regarded as a state prisoner for habeas corpus purposes, and thus must obtain a

certificate of appealability to pursue an appeal.  *See Wilson v. U.S. Parole Comm'n*, __ F.3d __, __, 2011 WL 2937277, at *3 (3d Cir. 2011).  Because Petitioner has not made a substantial showing of the violation of a constitutional right in connection with the adverse parole decision, 28 U.S.C. § 2253(c)(2), a certificate of appealability will not be issued.  However, our denial of a certificate of appealability does not mean Petitioner cannot appeal our ruling.  He may do so, as long as he also seeks a certificate of appealability from the court of appeals. *See* Federal Rule of Appellate Procedure 22; Local Rule of Appellate Procedure 22.1.

   An appropriate order follows.


            /s/ William W. Caldwell
            William W. Caldwell
            United States District Judge


Date: September 28, 2011

UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

STEVEN M. HUNTER,                       :
                                        :
              Petitioner                :
         v.                             :   CIVIL NO. 1:10-CV-1594
                                        :
UNITED STATES PAROLE                    :   (Judge Caldwell)
COMMISSION, et al.,                     :
                                        :
              Respondents               :

*O R D E R*

AND NOW, this 28th day of September, 2011, it is ordered that:

   1. The Amended Petition for Writ of Habeas Corpus (doc. 25) is denied.

   2. The Motion to Show Cause (doc. 19) is denied.

   3. The motion for implementation (doc. 20) is denied.

   4. The Emergency Petition for Writ of Mandamus (doc. 35) is denied.

   5. A certificate of appealability is denied. *See* 28 U.S.C. § 2253(c).

   6. The Clerk of Court is directed to close this case.

                                    /s/ William W. Caldwell
                                    William W. Caldwell
                                    United States District Judge